UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AUSTIN RICHARD ADJAYE,<br><br>          Plaintiff,<br><br>    v.<br><br>KEVIN COOK, et al.,<br><br>          Defendants. | Case No. 23-cv-01234-AGT<br><br>**ORDER ON MOTIONS TO DISMISS**<br>Re: Dkt. No. 10 |

The Bay Area Rapid Transit District (the "District"), the BART Police Department, and BART Police Officer Kevin Cook (collectively, "Defendants") have moved to dismiss Austin Adjaye's pro se civil rights complaint, under Rules 12(b)(5) and 12(b)(6). As detailed below, the Court will grant the 12(b)(5) motion and grant in part the 12(b)(6) motion. Three of Adjaye's claims—his First and Fourth Amendment and Bane Act claims—will be moving forward, and the Court will give Adjaye leave to amend some (but not all) of his other claims.

## I.   BACKGROUND

The Court begins by summarizing Adjaye's allegations, claims, and efforts to serve the defendants with process. On a motion to dismiss, the Court accepts the plaintiff's factual allegations as true. *See McShannock v. JP Morgan Chase Bank NA*, 976 F.3d 881, 886–87 (9th Cir. 2020).

**A.   Allegations**

While riding on a BART train in 2022, Adjaye came across an unattended backpack.

The backpack was black with a brown bottom. From the train, Adjaye called BART's non-emergency number and reported the unattended backpack. He identified his train and said he would sit by the backpack until he reached his destination. *See* Compl. ¶¶ 5–7.

Twenty-three minutes later, Officer Kevin Cook of the BART Police Department bordered Adjaye's train. Adjaye asked Officer Cook if he was looking for the unattended backpack. Officer Cook approached, took the unattended backpack, and searched its pockets. Officer Cook then asked to search *Adjaye's* backpack, an all-black backpack Adjaye had been wearing. *See id.* ¶¶ 8–12. Adjaye initially said "no" and asserted his "rights to be free from unlawful searches and seizures, . . . to remain silent, and not be identified/remain anonymous if [he] didn't commit a crime." *Id.* ¶ 13. Officer Cook responded that his request wasn't "a mere suggestion," after which Adjaye gave his backpack to Officer Cook. *Id.* ¶ 14.

Holding Adjaye's backpack, Officer Cook proceeded to open its pockets. He noticed a "building pass to a Government building" in one of the pockets. *Id.* ¶ 16. The pass had Adjaye's name and picture on it. Officer Cook told Adjaye that "someone [had] reported a stolen Passport." *Id.* ¶ 17. Officer Cook then left the train, taking with him only the unattended black-and-brown backpack. *See id.*[1]

After Officer Cook left the train, Adjaye had a brief conversation with another BART passenger who had observed the encounter. The witness and Adjaye believed Officer Cook had conducted "an illegal search and seizure." Compl. ¶ 19. Thirty minutes later, Adjaye called the BART Police Department to lodge a complaint. *See id.* ¶ 20.

Adjaye later submitted a written claim against the District, alleging biased policing

---

[1] In his complaint, Adjaye alleges that Officer Cook took "the backpack," without identifying which backpack. *Id.* ¶ 17. In his opposition brief, Adjaye clarifies that "Officer Cook took the unattended backpack." Dkt. 18 at 15.

2

and an improper detention and search. The District denied the claim, but the BART Police Department conducted an internal affairs investigation. The Police Department concluded that Adjaye's biased-policing allegations were unfounded but sustained his allegations of an improper detention and search. *See id.* ¶¶ 22–24.

**B.    Procedural History**

    **1.    The Complaint**

Adjaye filed a pro se complaint against the District, the BART Police Department, and Officer Cook in 2023. In his complaint, he asserted that Defendants, while acting under the color of state law, deprived him of certain constitutional rights in violation of 42 U.S.C. § 1983 and the Bane Act, Cal. Civ. Code § 52.1.

More specifically, Adjaye asserted that through Officer Cook, Defendants (i) unreasonably seized and searched him, violating the Fourth Amendment; (ii) retaliated against his public speech, violating the First Amendment; and (iii) interfered with his "right to remain silent," violating the Fifth Amendment. Adjaye also alleged that the District and the BART Police Department failed to train Officer Cook, giving rise to municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

    **2.    Service of Process**

Adjaye applied to proceed *in forma pauperis*, asserting that he couldn't pay the court costs and "still afford the necessities of life." *Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). The Court granted his application and directed the U.S. Marshal to serve Defendants with process. *See* Dkt. 5.

The U.S. Marshal attempted service at the addresses Adjaye listed in his complaint. *See* Dkt. 1 at 2; Dkt. 9. The U.S. Marshal succeeded in serving Officer Cook and the BART

Police Department but was unable to serve the District. *See* Dkt. 9. The District was no longer located at the address Adjaye had provided. *See id.* at 3.

### 3. The Motions to Dismiss

After Adjaye filed his complaint, Defendants moved to dismiss in part. The District moved to dismiss all claims against it, based on insufficient service of process. *See* Fed. R. Civ. P. 12(b)(5). Defendants also moved to dismiss all claims, except certain theories of the Fourth Amendment claim, for failure to state a claim for relief. *See* Fed. R. Civ. P. 12(b)(6). Defendants also requested dismissal of Adjaye's prayer for punitive damages.

## II. DISCUSSION

### A. Request for Judicial Notice and Motion for Extension of Time

Before evaluating the 12(b)(5) and 12(b)(6) motions, the Court addresses two matters of docket management: a request for judicial notice and a motion for an extension of time.

First, Defendants have asked the Court to take judicial notice of the two claim forms Adjaye submitted to the District and the District's rejection of those claims. *See* Dkt. 11. The request for judicial notice is unopposed, and the Court grants it.

Second, the day his motion-to-dismiss opposition was due, Adjaye filed a motion for an extension of time, asking for one more day to complete his brief. *See* Dkt. 17. The next day, as promised, Adjaye filed his opposition. *See* Dkt. 18. Adjaye is a pro se plaintiff and, as is evident from his complaint and other filings, he is zealously pursuing his claims. A one-day extension of the deadline to file an opposition is reasonable and warranted. The Court grants Adjaye's motion for an extension of time. The Court also confirms that it has considered Adjaye's opposition in evaluating the motions to dismiss.

**B.    Rule 12(b)(5) Motion**

Rule 12(b)(5) "allows the defendant to attack the manner in which service was, or was not, attempted." *Elite Semiconductor, Inc. v. Anchor Semiconductor, Inc.*, No. 5:20-CV-06846-EJD, 2021 WL 3037701, at *2 (N.D. Cal. July 19, 2021). "A federal court does not have jurisdiction over a defendant unless the defendant has been served properly . . . ." *Direct Mail Specialists, Inc. v. Eclat Computerized Techs., Inc.*, 840 F.2d 685, 688 (9th Cir. 1988).

From the record, it is clear the District was not successfully served. The U.S. Marshal attempted to serve the District at the address Adjaye listed in his complaint, but the District was no longer located at that address. *See* Process Receipt and Return, Dkt. 9 at 3 ("According to Security – No Longer @ This Address, Unable to Serve.").

Even though Adjaye is proceeding *in forma pauperis*, it is his "responsibility to provide [an] . . . address for each defendant to be served." *Borjas v. McGrath*, No. C 04-02252 JW PR, 2009 WL 667225, at *1 (N.D. Cal. Mar. 13, 2009). Adjaye didn't provide the U.S. Marshal with a current address for the District.

The Court grants the District's 12(b)(5) motion to dismiss for insufficient service of process. Adjaye may attempt again to serve the District. The District has stated that it will accept service at the District Secretary's Office. *See* Dkt. 10 at 13. Adjaye should be able to find the Secretary's address online. *See* https://www.bart.gov/contact. He can then file a request for the U.S. Marshal to serve the District at the Secretary's Office.

Alternatively, the District could waive service. Given that a second attempt to serve the District is likely to be successful, waiver would expedite further proceedings while conserving the U.S. Marshal's resources.

Because the Court is granting the District's Rule 12(b)(5) motion, all claims against

5

the District are dismissed without prejudice. The Court will nevertheless continue to refer to the defendants collectively, as the District has also joined the 12(b)(6) motion.

**C.     Rule 12(b)(6) Motion**

In evaluating a 12(b)(6) motion, the Court takes the well-pleaded factual allegations in the complaint as true, construes them in the light most favorable to the nonmoving party, and evaluates whether they state a plausible claim for relief. *See Fort v. Washington*, 41 F.4th 1141, 1144 (9th Cir. 2022).

### 1.     The BART Police Department as a Defendant

Before considering the heart of the motion, the Court addresses an issue raised in passing: whether Adjaye can sue the BART Police Department. Defendants say the BART Police Department is "not an actual entity." Mot., Dkt. 10 at 12. An implied assertion is that all claims against the Police Department should be dismissed.

There is a "longstanding precedent establish[ing] that both California municipalities and police departments are 'persons' amendable to suit under § 1983." *Duarte v. City of Stockton*, 60 F.4th 566, 568 (9th Cir. 2023), *cert. denied* 143 S. Ct. 2665 (2023). Against this backdrop, Defendants must do more than assert that the Police Department cannot be sued. To the extent Defendants have moved to dismiss all claims against the BART Police Department based on the Department's alleged non-entity status, the motion is denied.

### 2.     Fourth Amendment Claim

Turning to the merits, the Court first addresses Adjaye's Fourth Amendment claim. Defendants have *not* moved to dismiss this claim altogether. They have moved to dismiss a particular theory of the claim, i.e., that Officer Cook unlawfully seized Adjaye's property. As to other legal theories, e.g., that Officer Cook unlawfully detained Adjaye and unlawfully

searched his property, Defendants admit the claim can proceed. *See* Reply, Dkt. 19 at 3.

"A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015); *see also Quinto-Collins v. City of Antioch*, No. 21-CV-06094-VC, 2022 WL 18574, at *2 (N.D. Cal. Jan. 3, 2022) ("The question that matters at the motion to dismiss stage is whether a federal claim is properly presented," not whether each theory of liability is adequately alleged.) (simplified).

Adjaye has stated a plausible Fourth Amendment claim. That is the end of the matter for present purposes. Consistent with the cited cases, which are persuasive, the Court declines to consider whether a particular Fourth Amendment theory is deficient. Defendants' motion to dismiss portions of the Fourth Amendment claim is denied.

### 3. First Amendment Claim

Twenty-three minutes after Adjaye called BART's non-emergency number to report an unattended black-and-brown backpack on the train, Officer Cook approached, searched the black-and-brown backpack, and then demanded to search—and did search—Adjaye's backpack. Adjaye contends that the search of his backpack was in retaliation for his protected speech, i.e., for reporting the unattended backpack. *See* Compl. ¶¶ 36–44.

To state a First Amendment retaliation claim, Adjaye must plausibly allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1053 (9th Cir. 2019) (quoting another source).

To ultimately prevail on the third element, Adjaye "must show that the defendant's retaliatory animus was a 'but-for' cause, meaning that the adverse action against [Adjaye] would not have been taken absent the retaliatory motive." *Id.* (simplified).

Defendants insist that Adjaye hasn't satisfied the second or third element. On the second element, they assert that Adjaye hasn't plausibly alleged that his speech was chilled; rather, "he admits his speech continued unhindered immediately post-incident," when he and a witness opined that Officer Cook's search was unreasonable, and when he called the BART police to complain. Mot., Dkt. 10 at 15 (citing Compl. ¶¶ 19–20). On the third element, Defendants state that Adjaye hasn't alleged "any specific facts that show Officer Cook acted out of retaliatory animus as a result of [Adjaye's] expression or speech." *Id.*

Neither argument is persuasive enough to warrant dismissal at the pleading stage. The proper inquiry under the second element is not whether Defendants' actions chilled Adjaye's speech. The relevant question is whether their actions "would chill *a person of ordinary firmness* from continuing to engage in the protected activity." *Capp*, 940 F.3d at 1054 (quoting another source). Here, it is at least plausible that if a person of ordinary firmness reported an unattended backpack, and a BART police officer responded by searching that person's *own* backpack, the person would be reluctant to report unattended items in the future, fearing reprisal. The person's speech would be chilled.

As for the third element, Defendants are correct that Adjaye hasn't offered specific facts supporting retaliatory animus (e.g., Adjaye hasn't alleged that Officer Cook reprimanded him for reporting the unattended backpack). But "direct evidence of retaliatory intent rarely can be pleaded in a complaint." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). An "allegation of a chronology of events from which retaliation can be inferred is

8

sufficient to survive dismissal." *Id.* Here, Adjaye has satisfied this low bar. He alleged that he reported an unattended backpack and that, in response, Officer Cook detained him and searched his backpack, in addition to the unattended backpack. From this "chronology of events," retaliation can be inferred at the pleading stage. *Watison*, 668 F.3d at 1114.

Adjaye has stated a plausible First Amendment retaliation claim. Defendants' motion to dismiss the retaliation claim is denied.

### 4. Fifth Amendment Claim

When Officer Cook demanded to search Adjaye's backpack, Adjaye said "no" and asserted his Fifth Amendment right to remain silent. Compl. ¶ 13. Adjaye now asserts that he not only exercised his right to remain silent, but that Officer Cook violated that right. *See id.* at 15 (alleging a violation of the Fifth Amendment right "to remain silent").

For two reasons, this claim lacks merit. First, as alleged, Officer Cook never asked Adjaye to identify himself or to answer any questions. It is thus unclear how Officer Cook could have violated Adjaye's right to remain silent. Second, "[t]o bring a § 1983 action based on a Fifth Amendment violation, the government must violate a plaintiff's core constitutional right, which is the use of the compelled statements in a criminal case against the witness." *Chavez v. Robinson*, 12 F.4th 978, 992 (9th Cir. 2021) (simplified). Adjaye doesn't allege that any statements he made to Officer Cook were used in a criminal case against him. He therefore cannot pursue a Fifth Amendment claim under § 1983.

The Court grants Defendants' motion to dismiss Adjaye's Fifth Amendment claim. Adjaye hasn't identified any allegations he could add to rectify this claim, so the Court concludes that an amendment would be futile. The claim is dismissed with prejudice. *See Perez v. Mortg. Elec. Registration Sys., Inc.*, 959 F.3d 334, 340–41 (9th Cir. 2020).

### 5. Bane Act Claim

If a person interferes, or attempts to interfere, with another person's state or federal civil rights, "by threat, intimidation or coercion," the person whose rights were interfered with may sue the interferer under the Bane Act, Cal. Civ. Code § 52.1(b), (c). Adjaye has invoked the Bane Act, asserting that Defendants violated it.

To prevail under the Bane Act, a plaintiff must show that the defendant had a "specific intent" to violate the plaintiff's civil rights. *Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1043 (9th Cir. 2018). This standard can be satisfied with evidence supporting that the defendant acted in "[r]eckless disregard of the 'right at issue.'" *Cornell v. City & Cty. of San Francisco*, 17 Cal. App. 5th 766, 804 (2017).

Defendants argue that Adjaye hasn't satisfied the "specific intent" standard, but the Court finds that, for the same reasons discussed in its analysis of Adjaye's First Amendment retaliation claim, *see* Part II.C.3, *supra*, the Bane Act claim is well pleaded. "[D]irect evidence of … intent rarely can be pleaded in a complaint." *Watison*, 668 F.3d at 1114. For now, it is sufficient that Adjaye has alleged a chronology of events that could support an inference of retaliation. *See* Compl. ¶¶ 36–44. If retaliation is proven, i.e., if it is proven that Officer Cook unreasonably detained and searched Adjaye in retaliation for his public speech, a finding of specific intent to violate Adjaye's civil rights could follow.

Defendants' motion to dismiss the Bane Act claim is denied.[2]

### 6. *Monell* Claim

Adjaye alleges that the District and the BART Police Department failed to train

---

[2] Relatedly, the Court denies Defendants' request to dismiss Adjaye's prayer for punitive damages. At this stage, it is too soon to tell whether punitive damages may be available.

Officer Cook on how to respond to BART passengers who reported unattended backpacks. Had they adequately trained Officer Cook, Adjaye maintains that he wouldn't have been subject to an unreasonable—and retaliatory—search and seizure. *See* Compl. ¶¶ 54–60.

Under *Monell*, 436 U.S. 658, a public entity may be held liable for failing to train its employees if the failure was caused by "deliberate indifference" and was the "moving force" behind a violation of the plaintiff's constitutional rights. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011). Deliberate indifference is established with proof that a public entity's policymakers had "actual or constructive notice that the particular omission [of training] [was] substantially certain to result in the violation of the constitutional rights of their citizens . . . ." *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016) (emphasis omitted).

Adjaye hasn't plausibly alleged that the District or BART Police Department had actual or constructive notice that BART police officers were inadequately trained to respond to passengers who reported unattended backpacks. His complaint doesn't identify any similar instances involving unattended backpacks, or other unattended items, from which BART would have been put on notice that more training was needed. His complaint "simply recite[s] the elements" of a *Monell* claim, which is insufficient. *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

At the end of his complaint, under the heading "Conclusion," Adjaye offers what could be construed as a second theory of *Monell* liability. He alleges that BART has a history of "racial bias policing against African Americans." Compl. at 20. Indirectly circling back to his *Monell* claim, he contends that BART failed to train its officers on how to avoid racial

11

bias, which resulted in Officer Cook viewing him "as a suspect from the beginning." *Id.*

Based on what's been alleged, this second *Monell* theory isn't actionable either. Under *Monell*, a municipality can be held liable for a failure to train only if that failure was "a moving force behind a violation of constitutional rights." *Dougherty*, 654 F.3d at 900. In other words, there must be a link between the subject on which training was inadequate and an underlying constitutional violation. In his complaint, Adjaye hasn't alleged that racially biased policing resulted in an underlying constitutional violation. He therefore cannot currently pursue a *Monell* claim based on a failure to train about racial bias.

The Court grants BART's motion to dismiss the *Monell* claim. The dismissal is without prejudice, with one exception. Adjaye named Officer Cook as a *Monell* defendant, *see* Compl. at 18, but *Monell* liability applies only to "municipal entities, and not individual officers." *Brennan v. Las Vegas Metro. Police Dep't*, 2022 WL 990621, at *3 (D. Nev. Mar. 31, 2022). The Court dismisses Adjaye's *Monell* claim against Officer Cook with prejudice.

### III. CONCLUSION

For the above reasons, the Court orders as follows:

1. The District's 12(b)(5) motion is granted, without prejudice to Adjaye attempting again to serve the District by providing the U.S. Marshal with an updated address.

2. Defendants' 12(b)(6) motion is granted in part. The motion is granted on the Fifth Amendment and *Monell* claims. The motion is denied on the First and Fourth Amendment claims, the Bane Act claim, and the prayer for punitive damages.

3. Adjaye's Fifth Amendment claim and his *Monell* claim against Officer Cook are dismissed with prejudice. His *Monell* claim against the District and BART Police Department is dismissed without prejudice.

4. Adjaye may file an amended complaint by March 14, 2024. If he files an amended complaint, Defendants must answer or respond to the amended complaint by April 4, 2024. If Adjaye chooses not to amend, Defendants must answer the operative complaint by April 4, 2024.

5. Adjaye's motion for an extension of time to file an opposition brief (the opposition brief has been filed and considered) is granted.

6. Defendants' unopposed request for judicial notice is granted.

**IT IS SO ORDERED.**

Dated: February 15, 2024

Alex G. Tse
United States Magistrate Judge